### J. H. BAIN v. THE STATE.

#### No. 3065. Decided April 15, 1914.

**1.—Manslaughter—Requested Charges—Objections.**

In the absence of a bill of exceptions, and no errors being pointed out in the motion for new trial why the requested charges were refused, the same can not be considered on appeal. Following Berg v. State, 64 Texas Crim. Rep., 612.

**2.—Same—Motion for New Trial—Statement of Facts—Bill of Exceptions.**

Where the bill of exceptions setting forth the evidence on motion for new trial was not filed until about a month after court had adjourned, the same could not be considered on appeal.

**3.—Same—Evidence—Supporting Testimony.**

Where, upon trial of murder, and a conviction of manslaughter, a witness for the defense was contradicted by a witness for the State, this would not justify the defense in showing that at other times and places, the defendant's witness made statements which would corroborate what he testified to on the stand, there being no attempt on the part of the State to show that said defendant's witness was testifying under corrupt motives or had fabricated his testimony.

Appeal from the District Court of Angelina. Tried below before the Hon. L. D. Guinn.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*W. J. Townsend, Jr.* and *Martin M. Feagin,* for appellant.—Upon question of ruling out supporting testimony: Williams v. State, 24 Texas Crim. App., 637; Jones v. State, 38 Texas Crim. Rep., 87; Ballow v. State, 42 id., 263; Keith v. State, 44 S. W. Rep., 849.

*C. E. Lane,* Assistant Attorney General, for the State.

DAVIDSON, JUDGE.—This conviction was for manslaughter, the punishment being assessed at two years confinement in the penitentiary.

There were no exceptions reserved to the charge given by the court. Special charges were requested and refused. These are set forth in bills of exception as well as in the motion for new trial. Neither in the mo-

tion for new trial nor in the bills of exception are any reasons given why the charges were asked. They were simply asked, refused by the court, and exceptions taken. No grounds are alleged or anything stated either in the bills or motion for new trial as to their applicability to any state of facts or conditions of the record. Under Berg v. State, 64 Texas Crim. Rep., 612, 142 S. W. Rep., 884, and that line of cases, it would seem these matters are not so presented that they can be considered.

There is a bill of exceptions setting forth the evidence on motion for new trial, but it was filed nearly a month after court had adjourned. Under the decisions of this court this bill can not be entertained. As to bills of exception reserved to the evidence introduced on matters pertaining to motion for new trial, the rule laid down by this court is that these bills of exception must be filed during term time.

There is another bill of exceptions which sets forth substantially that appellant's theory of the case was self-defense, and that he shot and killed the deceased McHenry in self-defense; that deceased had a pistol drawn as if to shoot him when he, appellant, shot and killed McHenry. It is further alleged that Bird and Kimmey testified that at the time the shot was fired by defendant the deceased, McHenry, was standing at or near the corner of the building with a pistol drawn on appellant as if to shoot him. Defendant himself testified to the same fact. Garrison testified, in substance, that he heard the report of the gun from the direction where deceased and defendant were; that he immediately upon hearing the shot looked in that direction and saw deceased coming from the place where the gun fired, with a pistol in one hand and a scabbard in the other. Barbo testified for the defendant that he was in the office of the Carter-Kelley Lumber Co. at the time of the shooting. He further stated that Garrison was in the office at the time, but at a different place in the office from where Barbo was. Further testifying Barbo said: "I was in the office that Garrison was in; I was in the front part of it and they (meaning Garrison and others) were in the back of it. I don't think his, Garrison's, attention was called to the shooting until I called his attention to it. I saw the shooting and told Garrison about it. I looked right straight after I heard the report of the gun. I was standing there looking out at the time. When I looked at the place of the shooting McHenry was already there. I know that I was looking back in the direction at the very time the gun fired. I was looking right in the direction of the shooting. The first I noticed was immediately after the shot was fired back there, he, deceased, was right close to the corner of the commissary, right at the south end of same. When I first saw him, deceased, he had the pistol in his hand. He was holding the pistol in his right hand along there. I was the first one who saw him." All of this testimony was alleged to be material on the theory of self-defense, in that defendant claimed he shot deceased while deceased was standing at the corner of the commissary with his pistol drawn on him

Vol. 73 Crim.-34.

as if to shoot, and that he shot to protect his life. It is further recited that after this evidence was admitted Garrison was called by the State and testified that Barbo was not in the office at the time of the shooting referred to, and that in fact his testimony was a recent fabrication, and that said Garrison also testified that Barbo was not in the office with him at the time of the shooting; that Barbo did not call Garrison's attention to the shooting; that the witness Barbo was not there at the time of the shooting. Appellant then called the witness, Havard, who testified that he saw John Barbo at Manning at the time of the difficulty; that just after the difficulty occurred and before the witness left he saw Barbo and had a conversation with him about the shooting, and that Barbo related to him the circumstances of the shooting as he, Barbo, saw them, and to corroborate and to sustain him before the jury, after the contradiction by Garrison, the defendant offered to prove by Havard that Barbo had then and there related to him on the day of the killing, and shortly afterwards, the circumstances of the shooting as he saw it, which would have been substantially the same as Barbo testified before the jury. This was excluded by the court. The statement of Barbo to Havard was offered for the purpose of corroborating Barbo as to his testimony. The court refused it with this statement: "This bill is qualified as to the statement of facts set out in same and the statement of facts is referred to but the witness Havard and others were permitted to testify that they saw Barbo at the office at the time of the shooting, further the evidence did not show that Barbo testified to anything that took place before the shooting and there was no impeachment of Barbo but contradiction by Garrison of him." As qualified by the court we are of opinion there was no error. The court permitted the evidence to sustain Barbo's statement that he was present at the time and place denied by Garrison. This was simply a contradiction of Barbo's testimony by Garrison, Barbo testifying one way and Garrison the other, as to Barbo's presence and conversation. Corroboration was permitted to go before the jury as to the fact that Barbo was at the office at the time and place about which he testified, and in this way contradicted Garrison as to his presence. We think this was all that he was entitled to prove under this state of facts. We do not understand that because two witnesses contradict each other that that would be a fabrication of testimony by either witness; or that it would justify him in showing that at other times and places he made statements which would corroborate what he stated on the stand. Had the State introduced contradictory statements of Barbo with reference to the matter, or there was a charge that he had fabricated his testimony, or that he was testifying under corrupt motives, we would have a different question. The matter here presented was an issue between Garrison and Barbo as to whether Barbo was in the office and called Garrison's attention to the shooting at the time. Barbo testified he did and Garrison testified he did not. This raised simply a contradiction as to what occurred between them. It did not suggest that he was testifying under corrupt motives or was

fabricating testimony. The cases cited by appellant, towit: Williams v. State, 24 Texas Crim. App., 637; Jones v. State, 38 Texas Crim. Rep., 87; Keith v. State, 44 S. W. Rep., 849, and Ballow v. State, 42 Texas Crim. Rep., 263, are not in point. They refer to cases where witnesses testified under corrupt motives or fabricated his testimony. Barbo was not charged with corrupt motives or fabrication of testimony, as we understand it, but it was simply a question of veracity between Garrison and Barbo as to what occurred at the time and place. We are of the opinion that there was no error on the part of the court in this ruling under the circumstances indicated in the bills of exception.

Finding no reversible error in the record the judgment is affirmed.

*Affirmed.*